## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

REBECCA RAMSEY

                **Plaintiff,**

      **v.**                                    1:13-cv-03808-WSD

**WALLACE ELECTRIC
COMPANY and PHILLIP
WALLACE SR.,**

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendants Wallace Electric Company's ("WEC") and Phillip Wallace Sr.'s ("P. Wallace") (collectively "Defendants") Motion for Summary Judgment on Plaintiff Rebecca Ramsey's ("Plaintiff") claim for overtime pay under the Fair Labor Standards Act ("FLSA") [25].

## I.     BACKGROUND

### A.     Facts

On November 18, 2013, Plaintiff filed her Complaint against Defendants seeking overtime wages under the FLSA.  Plaintiff alleges that Defendants willfully failed to pay Plaintiff time-and-a-half for each hour in excess of forty (40) hours worked during a work week.  Plaintiff claims she is entitled to overtime pay

from November 18, 2010, through December 4, 2013.[1]  Plaintiff also claims she is

entitled, under 29 U.S.C. § 216(b), to liquidated damages, attorneys' fees and the

costs of this litigation.

On June 16, 2010, Plaintiff began working for WEC, a small business in

McDonough, Georgia, that provides electrical services, including service repair

work, preventive maintenance, electrical systems design and electrical renovations.

Defendant P. Wallace is Vice President and Chief Financial Officer of WEC.

Plaintiff did not have a formal title at WEC, but had various responsibilities in

running WEC's day-to-day business.  When Plaintiff was hired by WEC, she

understood she would be paid a salary.  Plaintiff's starting salary was $570.00 per

week, later raised to $620.00 per week.  WEC ranged in size from fifty to

ninety-one employees.  The majority of WEC's employees are electrical

technicians who perform electrical work for WEC's clients at the clients' place of

business.  WEC had six (6) office workers who performed administrative tasks,

and assisted in the day-to-day management of WEC's business.  Plaintiff was one

of the six office workers.

Plaintiff worked in WEC's business office and had a variety of

---

[1] Plaintiff's last day at WEC was on December 4, 2013.  Ramsey Dep. Tr. at
35: 23-25.

administrative responsibilities.  Debbie Wallace was the office manager, and was

Plaintiff's immediate supervisor.  Plaintiff's responsibilities at WEC were not

prescribed by any written handbooks or formal policies.  She described her job

duties in a memorandum she prepared dated July 27, 2011.  Ramsey Dep. Tr.

118-119., Ex. 6.

Defendant P. Wallace testified at his deposition that the employees, who

worked in the business office, including Plaintiff, "managed a very vital area of the

business that was critical to the financial well-being of the company."  Wallace

Dep. Tr. 23: 11-14.  P. Wallace also stated that the employees in the business

office, including Plaintiff, "had to make decisions downstream, people under them

had to get approval from them.  So they had to report to them, and their say so is

what stuck."  Id. at 23: 17-19.  For example, although Wallace acknowledged that

he had the final decision-making authority at WEC, Wallace believed Plaintiff

independently handled:

> [a]nything as far as information that they may need or directions to be
> given from, you know, new hire-packages of forms to be filled out,
> directions of how to fill them out, insurance that they have to deal
> with with the men, their time as far as getting recorded properly and
> turned in properly, pay rates, all of that stuff was in Rebecca's hands.

Id. at 26: 1-11.

Plaintiff admits that one of her most "significant" and "valuable" duties was

"talking to a customer."  Pl.'s Statement of Material Facts ("SOMF") at ¶ 130;

Wallace Dep. Tr. 73: 18-74: 4.  Plaintiff was responsible for service call intakes.

She interacted with WEC's customers by answering the telephone, collecting

customer information, inquiring about customer needs, confirming the availability

of technicians, and creating purchase orders that were posted on a job board for

assignments.  See Ramsey Dep. Tr. 53: 4-12-54: 1-10.  After purchase orders were

posted, a lead technician assigned technicians to particular jobs.  Pl.'s SOMF at

¶ 52.

Although Plaintiff did not place supply orders, she ensured that supplies

were properly delivered by manually matching items received against the packing

list delivered with the supplies.  Id. at ¶ 94.  After verifying delivery, Plaintiff

physically moved each item to the correct wooden pallet for the particular job for

which the supplies were ordered.  Id. at ¶ 95.  Plaintiff informed supervisors that

their supplies had arrived, with supervisors being responsible for directing the

materials to the correct job site.  Id. at ¶¶ 96-97.

Plaintiff also received invoices for materials ordered for each job, confirmed

the materials required were ordered for jobs, and validated that the time spent on

each job was posted correctly to the job.  Defs.' SOMF at ¶ 44.  Plaintiff also was

responsible for reviewing the time technicians billed on invoices and she matched

the time billed on the invoices to the technicians' time-sheets [sic]. Id. at ¶ 56. Plaintiff was responsible for identifying any discrepancies in a time-sheet [sic] or an invoice, and Defendants relied on her to make sure that the time billed on invoices was accurate. See Ramsey Dep. Tr. 62: 6-25. "It was rare" for her manager, Debbie Wallace, to review invoices before they were sent to a customer and Wallace only reviewed invoices if a customer complained. Id. at 63: 5-10. Plaintiff described "post[ing] invoices" as her "main job," and stated that WEC's "whole business was built around ordering materials to place on jobs." Id. at 66: 15-16; 67: 23-25-68: 1.

Some of WEC's projects required a permit from the state, city or local governments. Plaintiff prepared the documentation required to obtain these governmental permits, and consulted with the local government to "find out how much everything would cost, break it all down." Id. at 80: 13-20. She also called the government when lines were required to be marked before work was performed by WEC employees. Pl.'s SOMF at ¶ 72.

Plaintiff also performed a variety of Human Resources ("HR") functions. She was responsible for managing WEC's insurance benefits program, tracking employee vacation hours, and informing WEC's employees whether they were eligible for vacation time requested. Pl.'s SOMF at ¶¶ 84-86. Plaintiff was

5

responsible for preparing separation notices for employees after determining they were no longer employed by the company.  Id. at ¶¶ 114-115.  Plaintiff communicated with employees about WEC's insurance plan choices, enrolled employees in the plans, tracked insurance claims, and answered questions regarding WEC's health benefits.  Defs.' SOMF at ¶¶ at 76-77.  Plaintiff verified WEC's list of insured employees and ensured that employees, who left WEC's employment, were removed from the company's insurance plan.  Id. at ¶ 78.  Plaintiff made recommendations to senior management that certain employees be terminated on three or four occasions while she was at WEC.  Id. at ¶ 96.

B.    Procedural History

On June 27, 2014, Defendants moved for summary judgment on Plaintiff's claim for overtime pay under the FLSA.  Defendants contend that Plaintiff is an administrative employee exempt under the FLSA because her primary duties were office work directly related to the management or general business operations of WEC, and she exercised discretion and independent judgment regarding matters of significance in the performance of her duties.  On August 1, 2014, Plaintiff responded to Defendants' Motion for Summary Judgment, and argued that she is not exempt from the FLSA because she primarily performed clerical or secretarial work that did not involve the exercise of discretion or independent judgment.

## II.   DISCUSSION

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Analysis

The FLSA generally mandates that employees who work more than forty hours in a week must receive overtime pay for those hours worked in excess of forty, at a rate of one and one-half times their regular wage. 29 U.S.C. § 207(a)(1). The overtime requirements do not apply to employees working in a bona fide executive, administrative, or professional capacity, otherwise known as "exempt" employees. 29 U.S.C. § 213(a)(1). The parties do not dispute that Plaintiff regularly worked more than forty hours a week, or that Defendants did not pay

overtime wages for the hours Plaintiff worked in excess of forty hours a week. The parties dispute whether Defendants properly classified Plaintiff as exempt under the FLSA.

Whether an employee is properly classified as an "employee employed in a bona fide administrative capacity," and thus an "exempt" employee depends on the application of regulations issued by the Department of Labor.  <u>See</u> 29 C.F.R. § 541.2.  These regulations are given controlling weight unless they are found to be arbitrary, capricious or contrary to the statute.  <u>See</u> <u>Gregory v. First Title of America, Inc.</u>, 555 F.3d 1300, 1302 (11th Cir. 2009).  An employee is "employed in a bona fide administrative capacity," and thus exempt from FLSA's overtime requirements, if the employee is:

(1)  Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
(2)  Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3)  Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

The parties do not dispute that Plaintiff was compensated on a salary basis of more than $455 per week.  The issues are only whether the performance of office or non-manual work was Plaintiff's primary duty, and whether she exercised discretion

and independent judgment with respect to matters of significance.  The administrative exemption is an affirmative defense that Defendants bear the burden of proving.  See Rock v. Ray Anthony Int'l, LLC, 380 F. App'x 875, 877 (11th Cir. 2010); Hogan v. Allstate Ins., 361 F.3d 621, 625 (11th Cir. 2004).  The Court interprets the FLSA liberally in favor of an employee, and its exemptions are construed narrowly against the employer.  Id.

### 1.    *Primary Duty*

"The phrase 'directly related to the management or general business operations of the employer or the employer's customers,' refers to the type of work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  An example of such work, includes, but is not limited to:

> functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  The

regulations provide:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

"Production work relates to the goods and services that the business contributes to the marketplace, whereas administration relates to running the business."  Rock, 380 F. App'x at 878 (citations omitted).  The Court concludes that there is no genuine issue of fact that Plaintiff's primary duty was to perform work that is "directly related to the management or general business operations of [WEC] or [WEC's] customers."  See 29 C.F.R. § 541.201(a).  In Hogan, the Eleventh Circuit held that a sales employee's duties are administrative if the majority of the employee's time is spent on advising customers, hiring and training staff, delegating matters to other employees and determining the salary of employees.  361 F.3d at 627.  In Rock, the Eleventh Circuit affirmed the district court's grant of summary judgment in favor of an employer because the employee performed administrative functions that were "at the heart of [the employer's]

11

business" and "necessary to [the employer's] business operations."  380 F. App'x at 877-79.  The employee's primary job duties, in Rock, "included customer communication, choosing the appropriate crane for specific jobs, assigning operators to cranes, overseeing other employees, preparing and reviewing job tickets, and maintaining the crane rental schedule."  Id. at 877.

There is no dispute here that "post[ing] invoices" was Plaintiff's "main job," and WEC's "whole business was built around ordering materials to place on jobs." Ramsey Dep. Tr. at 66: 15-16; 67: 23-25-68: 1.  Plaintiff's duties were exclusively administrative in nature.  Plaintiff was responsible for service call intakes, preparing purchase orders and invoices, inventorying WEC's supplies, reviewing WEC's bills, obtaining permits, and performing a host of HR-related duties. Plaintiff's responsibilities are listed as administrative work under the regulations because she performed work in areas such as auditing, quality control, personnel management, human resources, employee benefits and regulatory compliance.  See 29 C.F.R. § 541.201(b).  Plaintiff generally worked free of direct supervision.  See 29 C.F.R. § 541.700(a).

Eleventh Circuit precedent also supports that Plaintiff's primary duties at WEC were administrative.  See Hogan, 361 F.3d at 627; Rock, 380 F. App'x at 878-79; see also Viola v. Comprehensive Health Mgmt., Inc., 441 F. App'x 660,

662-63 (11th Cir. 2011) (plaintiff's position qualified under the functions of advertising, marketing, public relations, and legal and regulatory compliance because plaintiff admitted to promoting the company's brand, scheduled and hosted promotional events, advertised the events, and ensured that the promotional events complied with Medicare regulations).

The Court concludes that Plaintiff's primary duties at WEC directly related to the management or general business operations of WEC.

### 2.   *Exercise of Discretion and Independent Judgment*

29 C.F.R. § 541.202(a) provides:

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance.  In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

"The phrase 'discretion and independent judgment' must be applied in light of all the facts involved in the particular employment situation in which the question arises."  29 C.F.R. § 541.202(b).  In determining whether an employee exercises discretion and independent judgment regarding matters of significance, the Court considers the following non-exhaustive factors:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

"The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction and supervision.  However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level . . . the fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." 29 C.F.R. § 541.202)(c).  An employee's decisions made through the exercise of discretion and independent judgment may consist of recommendations made to

senior management.  Id.

The exercise of discretion does not include "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work."  29 C.F.R. § 541.202(e).  "An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly.  For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment . . . ."  29 C.F.R. § 541.202(f).

Plaintiff principally argues that she did not exercise discretion or independent judgment because she performed mechanical tasks that were clerical and secretarial in nature, and that Plaintiff did not have authority to make vital decisions such as changing price quotes, approving invoices, ordering supplies, setting company policy for vacation time, selecting insurance plans, and assigning specific jobs to specific technicians.  The fact that Plaintiff was not the final decision-maker on aspects of WEC's business does not mean that she is not an exempt employee.  See Rock, 380 F. App'x at 880 (noting that evidence supported that plaintiff did not exercise discretion and independent judgment on some aspects of his job, but holding that sufficient evidence existed to show that plaintiff

15

exercised substantial control over the day-to-day operations of the company).

Plaintiff's argument that she did not exercise discretion or independent judgment because she was required to obtain approval from her supervisors on certain matters of significance is without merit.  In Hogan, the Eleventh Circuit held that the fact that an employee's actions are subject to review by a superior does not mean that an employee does not exercise discretion or independent judgment.  361 F.3d at 627; see also Henry v. Quicken Loans, Inc., 698 F.3d 897, 900-01   (6th Cir. 2012) (holding that active supervision does not mean that an employee does not exercise discretion, and an employer's use of "various methods to channel" an employee's discretion does not "eliminate the exercise of that discretion."); Dymond v. U.S. Postal Serv., 670 F.2d 93, 96 (8th Cir. 1982).

Plaintiff's argument that she did not make her own independent decisions is also contradicted by her testimony.  At her deposition, Plaintiff testified that she exercised judgment in creating invoices, determined whether there was a discrepancy in a time-sheet or an invoice, and that Defendants relied on her to ensure that the time billed on invoices was accurate.  See Ramsey Dep. Tr. 62: 6-25.  Plaintiff stated that "it was rare" for her manager, Debbie Wallace, to review the invoices before they were sent to a customer and that Wallace reviewed an invoice only if a customer complained about the charges.  Id. at 63: 5-10.

16

Plaintiff described "posting invoices" as her "main job" and admitted that WEC's "whole business was built around ordering material to place on jobs." Id. at 66: 15-16; 67: 23-25-68:1.  In other words, Plaintiff concedes that her role in creating invoices was crucial to the business operations of WEC and that she "perform[ed] work that affect[ed] business operations to a substantial degree, even if [] [her] assignments [we]re related to operation of a particular segment of the business." See 29 C.F.R. § 541.202)(b); see also Cue-Lipin v. Callanwolde Foundation, Inc., 1 F. Supp. 3d 1359, 1361-62 (N.D. Ga. 2014) (concluding that plaintiff exercised discretion and independent judgment by performing work that affected "business operations to a substantial degree" because, in overseeing the rental department, plaintiff generated substantial revenue for the employer).

The Court notes that Plaintiff's deposition and the memorandum she prepared describing her duties at WEC are consistent with P. Wallace's testimony. P. Wallace acknowledged that he had oversight over most matters at WEC, but he provided examples to support that Plaintiff exercised discretion and independent judgment on discrete tasks that were critical to the day-to-day running of WEC's business.  See Wallace Dep. Tr. 26-1-11.  Plaintiff does not directly dispute this testimony, but characterizes her responsibilities as involving no use of discretion or independent judgment simply because she had an immediate supervisor with

oversight responsibilities.

Plaintiff does not dispute that one of her most "significant" and "valuable" duties was talking to the customer.  Pl.'s SOMF at ¶ 130.  Her responsibility to handle service call intakes and coordinate jobs were tasks that were critical to the day-to-day operations of WEC, and Plaintiff "had the authority to bind the company on significant matters" because she facilitated and arranged the sale of WEC's services.  See Johnson v. Haley, No. 1-12-cv-1450-TWT, 2013 WL 2445164, at *2 (N.D Ga. June 5, 2013) (finding that plaintiffs exercised discretion and independent judgment because scheduling appointments was crucial to the operation of defendants' medical practice).

Plaintiff also exercised discretion and independent judgment in fulfilling her HR-related functions.  Plaintiff solely was responsible for managing all aspects of WEC's employer-based insurance plan.  Plaintiff determined whether employees were eligible for vacation, prepared separation notices after determining whether an employee was still employed by WEC and she made recommendations regarding whether certain employees were required to be terminated.  In performing her HR-related responsibilities, Plaintiff "implement[ed] [WEC's] management policies or operating practices,"   See 29 C.F.R. § 541.202)(b); 29 C.F.R. § 541.203(e) (explaining that "human resources managers who formulate,

interpret or implement employment policies . . . generally meet the duties requirements for the administrative exemption); see also Lockaby v. Top Source Oil Analysis Inc., 998 F. Supp. 1469, 1471-72 (N.D. Ga. 1998) (finding that employee's duties involved the exercise of discretion and independent judgment because employee was responsible for personnel matters, benefits matters, payroll administration and human resources administration).

Plaintiff served as the functional interface with Defendants' customers by responding to questions, assuring the accuracy of invoices and ensuring the receipt and delivery of supplies.  These customer care functions are important to the management of Defendants' business and their customer relationships which are critical to a small business.  Plaintiff had the important role of interacting with state, city and local government offices to obtain permits required for WEC and its employees to perform its electrical work.  She also prepared the information to support permit applications.

Plaintiff's primary duties were related to, and were important and significant to, the day-to-day operations of WEC's business, and they required the exercise of discretion and independent judgment.  That she performed important administrative functions and exercised discretion and independent judgment is confirmed by the detailed description of her duties as a WEC employee that she

prepared on July 27, 2011.  This list convincingly supports she is an exempt administrative employee.[2]  Plaintiff qualifies for the administrative exemption, and she is thus exempt from the FLSA's requirement of overtime compensation for employment in excess of 40 hours.

III.   **CONCLUSION**

Accordingly, having considered the facts in a light most favorable to the Plaintiff, and determined that no reasonable juror could find that Plaintiff was not an exempt administrative employee,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's claim for overtime pay under the FLSA is **GRANTED** [25].

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

---

[2] This description and Plaintiff's deposition put in context the recast duties description in the affidavit Plaintiff submitted in opposition to the Motion for Summary Judgment.  The Court considered the affidavit as true but supplemented it by the details provided in Plaintiff's deposition and self-authored job description.

**SO ORDERED** this 27th day of March, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE